UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL E. SULLIVAN, III, | * |
| Plaintiff, | * |
| v. | *   14-cv-14299-ADB |
| CAITLIN E. FLAHERTY, et al., | * |
| Defendants. | * |

MEMORANDUM AND ORDER

March 27, 2015

BURROUGHS, D.J.

## I. Introduction

Plaintiff Daniel E. Sullivan, III ("Mr. Sullivan") filed this action pro se against 16 Defendants: Caitlin E. Flaherty ("Ms. Flaherty"), Mr. Sullivan's former girlfriend; 13 police officers of the Marshfield Police Department, all in both their official and individual capacities; the Marshfield Police Department, under the doctrine of respondeat superior; and the Town of Marshfield, under the doctrine of respondeat superior. Before the Court are two motions to dismiss filed by (1) the police officers, the Marshfield Police Department, and the Town of Marshfield (collectively, the "Marshfield Defendants") [ECF No. 7], and (2) Ms. Flaherty [ECF No. 12]. For the reasons explained in this Memorandum and Order, the Marshfield Defendants' motion to dismiss is GRANTED; Ms. Flaherty's motion to dismiss is GRANTED IN PART AND DENIED IN PART; and Mr. Sullivan's complaint is DISMISSED in its entirety.

## II. Summary of Relevant Factual Allegations

This case stems from Mr. Sullivan's two arrests and his prosecution, trial, and conviction of charges of violating a restraining order and criminal harassment of Ms. Flaherty, all of which

1

occurred in 2011. Mr. Sullivan's complaint [ECF No. 1] includes the following factual allegations, which the Court accepts as true for purposes of a motion to dismiss.

On December 11, 2010, Ms. Flaherty requested and received a permanent restraining order against Mr. Sullivan. [Id. p. 5, ¶ 1.][1] In support of the restraining order, Ms. Flaherty signed a written statement under penalties of perjury. [Id. pp. 5-6, ¶ 2.] Mr. Sullivan alleges that Ms. Flaherty made various false statements therein. [Id. pp. 6-7, ¶ 3.]

Later on December 11, 2010, Defendant Officer Todd Goodwin ("Officer Goodwin") interviewed Mr. Sullivan at the Marshfield Police Station and served him with the restraining order. [Id. pp. 6-20.] Defendant Detective Kimberly Jones ("Detective Jones") also participated in the interview. [Id.] Following the interview, on December 11, 2010, Officer Goodwin and Detective Jones submitted a police report. [Id. p. 20, ¶ 4.] Mr. Sullivan alleges that Officer Goodwin and Detective Jones made various false statements in the police report. [Id. pp. 20-21, ¶ 4.]

On April 9, 2011, Ms. Flaherty reported to the police that she found a gift with an unsigned letter in her mail that she believed to be from Mr. Sullivan. [Id. p. 21, ¶ 1.] At the same time, she reported two prior incidents that she also believed to be connected to Mr. Sullivan: a car fire in her driveway and a box of chocolates that was left in her mail with an unsigned card on Valentine's Day. [Id. p. 22, ¶ 2.]

The next day, on April 10, 2011, Ms. Flaherty filed an affidavit alleging that Mr. Sullivan violated the restraining order and was harassing her. [Id. p. 22, ¶ 4.] Mr. Sullivan alleges that the affidavit included various false statements. [Id. pp. 22-23, ¶ 6.]

---

[1] Page numbers are provided because the paragraph numbering in Mr. Sullivan's complaint restarts multiple times.

On April 10, 2011, Defendant Sergeant Kevin Morris ("Sergeant Morris") filed an application for a criminal complaint charging Mr. Sullivan with violating the restraining order and criminal harassment. [Id. p. 23, ¶ 7.] Mr. Sullivan alleges that the complaint included various false statements by Sergeant Morris and Ms. Flaherty. [Id. pp. 23-24, ¶ 7.] Later on April 10, 2011, Sergeant Morris arrested Mr. Sullivan. [Id. p. 24, ¶ 8.]

On December 4, 2011, another criminal complaint was issued charging Mr. Sullivan with violating the restraining order and criminal harassment. [Id. pp. 24-25, ¶ 1.] Mr. Sullivan alleges that the complaint included various false statements by Defendant Patrolman Timothy Cleary ("Patrolman Cleary") and Ms. Flaherty. [Id.] Later on December 4, 2011, Sergeant Morris arrested Mr. Sullivan. [Id. p. 25, ¶ 2.]

On December 8, 2011, Mr. Sullivan was tried in Plymouth District Court on charges of violating the restraining order and criminal harassment. [Id. p. 26, ¶ 1.] Defendants Ms. Flaherty, Officer Goodwin, Detective Jones, and Officer Morris all testified against Mr. Sullivan, and Mr. Sullivan alleges that they all made various false statements in their testimony. [Id. pp. 26-30.] Mr. Sullivan was convicted at the close of the trial. [Id. pp. 29-30, ¶ 42.]

On December 9, 2011, Mr. Sullivan was sentenced to 2 ½ years in the Plymouth House of Correction, with 6 months to serve, 2 ½ years of supervised probation, with court-ordered mental evaluation, court-ordered batterer's intervention, victim/witness assessment, probation fee and surcharge, and other fines and fees. [Id. p. 30, ¶ 43.]

On December 8, 2014, Mr. Sullivan filed a complaint in this Court. He brings five counts for alleged violations of 42 U.S.C. § 1983 ("Section 1983"), which are captioned "Arrest" (Count I), "Detention and Confinement" (Count II), "Strip Search" (Count III), "Conspiracy" (Count IV), and "Refusing or Neglecting to Prevent" (Count V). Mr. Sullivan brings eight

additional claims under Massachusetts law for Malicious Prosecution (Count VI), Malicious Abuse of Process (Count VII), Violation of Massachusetts Civil Rights Act (Count VIII),[2] False Arrest and False Imprisonment (Count IX), Conspiracy (Count X), Intentional Infliction of Emotional Distress (Count XI), Negligence (Count XII), and Negligent Infliction of Emotional Distress (Count XIII).[3]

Both motions to dismiss submit that Mr. Sullivan's claims are barred under the applicable statutes of limitations and under the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994). The Marshfield Defendants additionally argue that certain counts must be dismissed under various provisions of the Massachusetts Tort Claims Act, G.L. c. 258. Ms. Flaherty separately argues that she is entitled to dismissal and attorney's fees pursuant to the Massachusetts anti-SLAPP statute, G.L. c. 231, § 59H.

### III. Discussion

#### A. Legal Standard – Motion to Dismiss

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), the Court accepts as true all well-pleaded facts in the light most favorable to the plaintiff and draws all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 384 (1st Cir. 2011). Although detailed factual allegations are not required to survive a motion to dismiss, "more than labels and conclusions" are required. Bell Atl. Corp. v. Twombly,

---

[2] The Court construes Count VIII as a claim under G.L. c. 12, §§ 11H, 11I (the complaint lists the statute as G.L. c. 2, §§ 11-12, sections that are unrelated to Mr. Sullivan's claims).

[3] Although Mr. Sullivan does not clearly delineate which counts are asserted against which Defendants, consistent with the briefing of these motions, the Court will construe all of the counts to be asserted against the Marshfield Defendants, and Counts VI-XI additionally to be asserted against Ms. Flaherty.

4

550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action" is not enough. Id. The facts alleged must "raise a right to relief above the speculative level." Id. The plaintiff must "nudge[] [the] claims across the line from conceivable to plausible," or the claims will be dismissed. Id. at 570. In this case, the Court construes Mr. Sullivan's complaint liberally because it was filed pro se. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### B. Count III, Alleging a "Strip Search," Fails to State a Claim Under Florence v. Board of Chosen Freeholders of County of Burlington

Mr. Sullivan alleges in Count III ("Violations of 42 U.S.C. 1983: Strip Search") that his constitutional rights were violated because he was "subjected in the Plymouth House of Correction to a strip search of his body." [ECF No. 1, Count III.] In Florence v. Board of Chosen Freeholders of County of Burlington, the Supreme Court held that due to correctional officials' "significant interest in conducting a thorough search as a standard part of the intake process," 132 S. Ct. 1510, 1518 (2012), a mandatory, unclothed search of all arriving detainees at a correctional facility, without reasonable suspicion, does not violate the Fourth or Fourteenth Amendments, id. at 1523. Mr. Sullivan's allegation that a "strip search" was conducted includes no facts to suggest that the alleged search went beyond what the Supreme Court expressly permitted in Florence. An additional problem requiring dismissal of Count III is that there is no suggestion in the complaint that any named Defendant was involved in any way in the alleged "strip search." Count III is therefore DISMISSED with prejudice pursuant to Rule 12(b)(6) for failure to state a claim.

## C. Counts I, II, IV, and V are Barred by the "Favorable Termination" Rule of Heck v. Humphrey

Mr. Sullivan's remaining claims under Section 1983 are barred by the "favorable termination" rule of Heck v. Humphrey, 512 U.S. 477 (1994). Under this rule,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Id. at 486-87. In other words, "[C]ivil rights claims do not accrue unless the litigant has obtained a 'favorable termination' of the underlying conviction, parole, disciplinary action or condition of confinement." Batavitchene v. O'Malley, Civ. No. 13-10729, 2013 WL 1682376, at *4 (D. Mass. Apr. 16, 2013).

Following a trial, Mr. Sullivan was convicted of violating a restraining order and criminally harassing Ms. Flaherty. [ECF No. 1, pp. 29-30, ¶ 42.] There is no allegation that Mr. Sullivan has obtained a favorable termination of his conviction by way of reversal on appeal or otherwise. Indeed, Mr. Sullivan asserts in his Opposition brief that his appeal of the conviction is currently "in process" in state court. [ECF No. 14, at 5.][4]

With the exception of his "strip search" claim, which fails to state a claim for the reasons explained in the previous section, the rest of Mr. Sullivan's Section 1983 claims are such that if Mr. Sullivan were to prevail, this "would necessarily imply the invalidity of his conviction." Heck, 512 U.S. at 487. Mr. Sullivan claims that his former girlfriend and various police officers

---

[4] Mr. Sullivan argues, "Since a timely Appeal was filed, the Statute of Limitations does not expire and damages accrue or toll for 1 year beyond the time the Appeal is adjudicated." [ECF No. 14, at 5.] He does not cite any authority for this proposition. The Court notes that its ruling is based on the Heck bar and therefore not reach the statute of limitations issue.

conspired against him; that they made false statements in support of criminal complaints charging him with violating a restraining order and criminal harassment; and that, based upon these false statements, they unconstitutionally arrested, prosecuted, and convicted him. Mr. Sullivan does not claim that his arrest was unlawful in the sense that it was without a warrant and without probable cause. Rather, his Section 1983 claims—including his arrest and detention claims—are predicated on the allegedly false allegations made against him which culminated in his conviction.

Under these alleged facts, Mr. Sullivan's Section 1983 claims have not accrued because his conviction has not been invalidated. See Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 4 (1st Cir. 1995) (under Heck, Section 1983 claims arising from arrests pursuant to a warrant predicated on false allegations by undercover officer and informant "did not accrue until their respective criminal prosecutions ended in acquittals"). Accordingly, Counts I, II, IV, and V are DISMISSED with prejudice.

### D. State Law Claims

Federal jurisdiction in this action rests on Mr. Sullivan's Section 1983 claims (Counts I-V). See 28 U.S.C. § 1331 ("The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Counts I-V are all dismissed for the reasons explained above. The Court declines to exercise supplemental jurisdiction over any remaining state law claims pursuant to 28 U.S.C. § 1367(c) (district courts "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"). See Faust v. Coakley, Civ. No. 07-11209, 2008 WL 190769, at *5 (D. Mass. Jan. 8, 2008) (dismissing Section 1983 claim for failure to state a claim and declining to extend pendent jurisdiction over remaining state law claims); see also

7

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties . . . . Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). Therefore, the remaining counts are DISMISSED without prejudice to whatever right Mr. Sullivan may have to pursue these claims in state court.

### E. Ms. Flaherty's Request for Legal Fees and Expenses Pursuant to the Massachusetts Anti-SLAPP Statute

Ms. Flaherty's motion to dismiss pursuant to Rule 12(b)(6) is GRANTED for the reasons explained above. However, her request for attorney's fees and costs pursuant to Massachusetts' Strategic Litigation Against Public Participation ("anti-SLAPP") statute, G.L. c. 231, § 59H, is DENIED without prejudice.

The anti-SLAPP statute "was enacted by the Legislature to provide a quick remedy for those citizens targeted by frivolous lawsuits based on their government petitioning activities." Kobrin v. Gastfriend, 443 Mass. 327, 331 (2005). SLAPP suits target people for "reporting violations of law," among other petitioning activities. Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 161 (1998). Ms. Flaherty argues that this is a SLAPP suit because the sole causes of action alleged against her are based upon her reporting of violations of law through affidavits and judicial testimony. [ECF No. 12-1, at 10.]

Ms. Flaherty may well be correct in her assessment that Mr. Sullivan's claims against her amount to a SLAPP suit, but this, too, is more properly addressed in the state courts in light of the dismissal of all the federal law claims. Thus, Ms. Flaherty's motion for attorney's fees and

costs pursuant to the anti-SLAPP statute is DENIED without prejudice to her right to pursue this remedy in state court (if Mr. Sullivan pursues his remaining claims in state court).[5]

IV. **Conclusion**

For the above reasons, the Marshfield Defendants' motion to Dismiss [ECF No. 7] is GRANTED, and Ms. Flaherty's motion to dismiss [ECF No. 12] is GRANTED IN PART AND DENIED IN PART. Mr. Sullivan's complaint is DISMISSED in its entirety. The Section 1983 claims (Counts I-V) are dismissed with prejudice. The state law claims (Counts VI-XIII) are dismissed without prejudice. Ms. Flaherty's request for legal fees and expenses pursuant to the Massachusetts anti-SLAPP statute is DENIED without prejudice.

**SO ORDERED.**

Dated: March 27, 2015 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE

---

[5] This Court historically has held that the anti-SLAPP statute is a state procedural tool that is unavailable under the Federal Rules of Civil Procedure. See Stuborn Ltd. P'ship v. Bernstein, 245 F. Supp. 2d 312, 316 (D. Mass. 2003); Baker v. Coxe, 940 F. Supp. 409, 417 (D. Mass. 1996); Turkowitz v. Town of Provincetown, Civ. No. 10-10634, 2010 WL 5583119, at *2-*3 (D. Mass. Dec. 1, 2010); South Middlesex Opportunity Council, Inc. v. Town of Framingham, Civ. No. 07-12018, 2008 WL 4595369, at *8-*11 (D. Mass. Sept. 30, 2008); Lynch v. Hayes, Civ. No. 07-10138, 2008 WL 2682692, at *1 (D. Mass. June 30, 2008). More recently, in Godin v. Schencks, however, the First Circuit held that Maine's anti-SLAPP statute is substantive and applies to state law claims in federal court. 629 F.3d 79, 92 (1st Cir. 2010). Thereafter, in the unpublished opinion of Bargantine v. Mechanics Coop. Bank, Judge Gorton held, based on the logic of Godin and the similarity of language between the Maine and Massachusetts anti-SLAPP statutes, that the Massachusetts anti-SLAPP statute is also substantive and that its remedies thus may be imposed in a federal court proceeding. Civ. No. 13-11132, 2013 WL 6211845, at *3 (D. Mass. Nov. 26, 2013). I am inclined to agree with Judge Gorton's view of the law, but given the legal uncertainty and the fact that all of the federal claims have been dismissed, I decline to reach the issue here.